JOSE LUIS MARTINEZ OCAMPO
#56493-112
UNITED STATES PENITENTIARY
3901 KLEIN BLVD.
LOMPOC, CA  93436

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

AT LOS ANGELES

JOSE LUIS MARTINEZ-OCAMPO,
            PETITIONER.

v.

UNITED STATES OF AMERICA,
            RESPONDENT.

CV 10-3209 PA

CASE NO: 09-00698
HON. JUDGE PERCY ANDERSON (A) (PA)

MOTION FOR DISCOVERY PURSUANT TO
HABEAS RULE 6 (A) AND APPOINTMENT
OF COUNSEL UNDER 18 U.S.C. § 3006A.

**PETITIONER,** Jose Luis Martinez-Ocampo, pro se, and ask this court

to grant discovery pursuant to Habeas Corpus Rule 6 (a), and appointment

of an attorney under 18 U.S.C. § 3006A. Petitioner also ask that the

court contrue this motion liberally under Haines v. Kerner, 404 U.S. 519]

(1972).

STATEMENT OF FACTS

Petitioner state that he was arrested on charges of Harboring and

Concealing Illegal Alien for Finantial Gain, 8:1324 (a)(1)(iii), (a)(1)(B)(i)

Count (1) on 7-10-2009. Petitioner state that there were three sentencing

dates and hearing, September 28, 2009, Januaru 11, 2010, January 19, 2010

in which I was sentenced to 18 months confinement 6 months more than the

guideline range which was 6 to 12 months, due to facts and circumstances

for which ther was no proof, and there was judge found facts. See January

19, 2010 Sentencing Hearing page 40 attached.

DENIED
BY ORDER OF
UNITED STATES DISTRICT JUDGE
ON _____

(1)

Petitioner state that as time went on at each sentencing hearing the facts that were alleged to have taken place started to resolve themself in petitioner's favor which made his culpability less and less as to the allegations. Petitioner finally ended up pleading to 8 U.S.C. § 1324 (a) (1) (A) (iii). Harboring and Concealing and Illegal Alien. Petitioner state that he received a package from the government dated 7-16-2010, which was their the government's response in Opposition To Defendant's Motion To Vacate, Set Aside, or Correct Conviction anSentencing Pursuant To 28 U.S.C. § 2255; Memorandum Points And Authorities; Exhibits.   Petitioner state that there are transcripts that have never been seen by him, for which he reviewed them shows that there are investigative reports and statements by witnesses that he have never seen, and that it will help him in his resolution of his § 2255 claims. In the January 11, 2010 Transcripts the HSU: at page 5 stated: We spoke to the victim's mother, and nothing came out of that. Petitioner state that he never saw this investigative report. On page 11 the HSU state: that the reason we are not seeking enhancement because we do not believe we can meet the burden. The court stated that the facts are disputed?

      (1) Need investigative reports from th babies mother, Ms. Soleto

      (2) On page 27 need babies farther report;

      (3) On page 28 need brothers signed statement;

      (4) Statements from wife and children page 40

      (5) Statement of Lawyer and wife from Mexico pg. 37

      (6) Need contracts and letters pg. 24

      (7) Need all discovery material pg. 24

      (8) Need Grand Jury Minutes  pg. 41

At January 19, 2010 Sentencing Hearing there were conversation about reports for which petitioner never saw, and request that the court allow him to review them before he submit his reply to the government.

(1) pg. 10-12 Clinical Reports

(2) pg. 12 Need information that was used to remove certain section from the P.S.I. and the reason it was used

(3) it state that on pg. 12-13 Mr. Nicolaysen : The concerns that I have is that the pre-sentence report in paragraph 9-14 and 16 adopts as true the statement made by the complaining witness, Sotello, who is the childs mother. The report is written as if those assertions are, pg. 13 in fact what happened. And I--I, once again, as I did last week, thakk the government for revisting this case very thouroughly, and we have now come to a very different understanding of events. The attorney Nicolaysen asking the court to strike these paragraphs. Petitioner state that had he had an oppotunity to have these documents in his possession he could have reasonably made an better decision whether to plea or not. Pg. 13-15 the court beginsto strike the paragraphs or allow certain sections to stand.

(4) On page 14 Mr. Nicolaysen state that this is not an extortion case.

(5) pg 15 Ocampo interview with government

Petitioner state that this is important to his § 2255 inneffective assistance of counsel claim and that he only pled because his attorney told him too for a 6 month sentence.

Petitioner also state that the P.S.R. states at 100 an 101 that the probation officer has not identified any factors that would warrant a recommendation for a variance outside of the advisory guideline range. On page 40 defense counsel objected to the sentence being outside the guideline range. See 34-40.

CONCLUSION

Petitioner ask this court to allow and extention of time so that he can
get the documents for he can respond to the § 2255.

CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy has been sent to the following
individuals: Clerk, U.S.D.C. Central District Of California, 312 N. Spring St.,
Los Angeles, CA 90012, U.S. Attorney Office, Central District Of California,
312 N. Spring St., Los Angeles, CA 90012 on July 20, 2010

PENALTY OF PERJURY

I hereby attest persuant to 28 U.S.C. § 1746 that the foregoing information
is true and exact to the best of my knowledge and belief this 20 day of July
2010.

Respectfully,

Jose Luis Martinez-Ocampo
UNITED States PENITENTIARY
3901 Klein Blvd.
Lompoc, CA  93436

x.c.file/jlmo/july 20, 2010.

1

1        UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA

3     HONORABLE PERCY ANDERSON, JUDGE PRESIDING

4   UNITED STATES OF AMERICA,          )
                                       )
5                                      )
                                       )
6                     Plaintiff,       )
                                       )
7                                      )
                                       )
8             Vs.                      )   No. CR 09-00698 (A) PA
                                       )
9                                      )
                                       )
10  JOSE LUIS MARTINEZ-OCAMPO,         )
                                       )
11                                     )
                                       )
12                    Defendant.       )   COPY
                                       )
13  _____)

14

15

16   REPORTER'S TRANSCRIPT OF JUDGMENT AND SENTENCING

17           LOS ANGELES, CALIFORNIA

18      MONDAY, JANUARY 11, 2010; 8:37 A.M.

19

20

21        LEANDRA AMBER, CSR 12070, RPR
       OFFICIAL U.S. DISTRICT COURT REPORTER
22        312 NORTH SPRING STREET, # 408
          LOS ANGELES, CALIFORNIA 90012
23            www.leandraamber.com
                (213) 894-6603

24

25

1        MR. NICOLAYSEN:  I do not think so.

2        MS. HSU:  I do not believe so, your Honor.

3        THE COURT:  Has the child required any medical

4    care?  Any counselling?

5        MS. HSU:  None that the Government is aware of.

6      ✱ THE COURT:  Has the Government made any inquiries

7    of the victim or the parents?

8      ✗ MS. HSU:  We did speak with the victim's mother,

9    and nothing came out of that.

10       THE COURT:  The Court is contemplating imposing

11   several conditions of supervised release.  I want to give

12   you notice of those conditions so that if you have any

13   objections, we can take those objections up now or I'll put

14   the matter over to allow to you file written objections.  And

15   those conditions are as follows:

16       The defendant shall comply with the rules and

17   regulations of the United States Probation Office and General

18   Order 318;

19       The defendant shall not commit any violation of any

20   local, state, or federal law;

21       The defendant shall refrain from any unlawful use

22   of a controlled substance;

23       The defendant shall submit to one drug test within

24   15 days of release from imprisonment and at least two

25   periodic drug tests thereafter, not to exceed eight tests per

```
 1          The Government has no objection in disclosing the
 2     PSR to the third parties. *We do not believe the factual
 3     assertions by the mother of the victim is necessarily wrong.
 4     Perhaps it's disputed, and that's the reason why we're not
 5     seeking certain enhancements because we do not believe that
 6     we can meet the burden, but that doesn't mean it's wrong.*
 7             *THE COURT:  You can't meet the burden because
 8     they're disputed?  Because his version of the facts is on --
 9     he has a version of the facts, and the mother and the child
10     have a different version of the facts, is that why you -- is
11     that why you can't meet your burden?
12          Isn't it up to the Court to decide?  It's basically
13     a credibility issue; right?  And it's up to the Court to
14     decide -- trier of fact or the Court to decide who it
15     believes; right?*
16             MS. HSU:  That is correct, your Honor.
17             THE COURT:  Okay.  Your request is denied.
18             MR. NICOLAYSEN:  Your Honor, with regard to the
19     objections or corrections to the Presentence Report, may I go
20     forward and just address those on the --
21             THE COURT:  We'll get to those.
22             MR. NICOLAYSEN:  Okay.  Very well.
23             THE COURT:  Now, I believe your position is -- is
24     that the guideline range in this case, given the stipulation
25     by the parties, is an offense level of nine and a range of
```

00:08:55  (line 5)
00:09:11  (line 10)
00:09:31  (line 15)
00:09:42  (line 20)
00:10:02  (line 25)

1    could come and pick up the child.

2         My client made due diligence efforts, but we do

3    agree and fully acknowledge your Honor's view that when a

4    child at that age is in a stranger's home for a month, it

00:29:16 5   doesn't inspire confidence.

6         We agree with that, but that was not the original

7    plan, and it just essentially got out of control.

8         THE COURT:  So at some point the father is

9    contacted; correct?

00:29:31 10       MR. NICOLAYSEN:  Yes.  That is correct.

11        THE COURT:  And do I have it right that either the

12   father's version or the complaining witness's version is that

13   the father sends the defendant some money?

14        MS. AXEL:  Yes, your Honor.  I -- I think the

00:29:41 15  father -- talking about the father's version of events gets

16   even more complicated.  It's unclear.

17        So of -- it does appear, your Honor, that after

18   she's not -- the complaining witness is not originally able

19   to cross the border, she then has to engage a different

00:30:02 20  coyote.  She claims that she was eventually -- she was first

21   supposed to have this defendant help her across the border --

22        THE COURT:  Uh-huh.

23        MS. AXEL:  -- and then she goes to another coyote.

24   So the father's version of events, your Honor, is at first

00:30:12 25  that, you know, this defendant asks for additional money.  Or

1    let me take that back.

2         I think his first story was that it was the second

3    coyote who asked for additional money, and then later the

4    father said it was this defendant who asked for additional

00:30:27 5   money.

6         And so we really had doubts as to whether the

7    father's testimony was truthful and could be corroborated.

8    He did provide some additional money and some bank statements

9    to support it but that goes to an account that, you know, we

00:30:41 10  can't trace.

11        MR. NICOLAYSEN:  Your Honor, again, I thank the

12   Government.  They took a second look at this case and looked

13   at it very closely, and I appreciate it.  Let me emphasize

14   one thing the Court should be aware of.

00:30:51 15       When my client did eventually speak with a

16   complaining witness in the third week of June, he did ask for

17   money.  He was asking for reimbursement of the $45,000 that

18   he had advanced to her in Mexico pursuant to the silver

19   contract.

00:31:02 20       It was my client's view that the -- that

21   Miss Sotello, the complaining witness, had misused that money

22   to pay the coyotes.  It was supposed to be used for her

23   brother, who is in Mexico and who is one of the witnesses who

24   gave a signed statement that the Government has attesting to

00:31:22 25  the authenticity of this business contract.

UNITED STATES DISTRICT COURT

1    keep her there until the family comes and gets her.

2              THE COURT:  Where is the contract signed at?

3              MR. NICOLAYSEN:  It is signed in Mexico.  It was

4    prepared by an attorney in Mexico -- both contracts.  There

00:25:29 5   were also signed witness statements by the complaining

6    witness's brother, as well as the attorney himself and the

7    attorney's wife, all of whom apparently observed in person

8    the signing of those two contracts in Mexico by my client and

9    by the complaining witness.  All of that is in the pretrial

00:25:51 10  discovery.

11             THE COURT:  So he is in Mexico, she's in Mexico,

12   and they agree that he's going to -- they're going to do this

13   little silver exchange.

14             MR. NICOLAYSEN:  Correct.

00:26:01 15            THE COURT:  And, in addition, he's going to keep

16   her child here in the United States for some period of time?

17             MR. NICOLAYSEN:  Until she, the complaining

18   witness, and the other child, the nine year old, come into

19   the U.S. separately, come to the residence, pick the child

00:26:20 20  up.  That is -- and the father comes from Chicago.  It was

21   contemplated that he would, in fact, also participate in

22   picking up the child.

23             THE COURT:  Okay.  And he -- and it's his version

24   that the child is brought to his house by somebody else?

00:26:42 25            MR. NICOLAYSEN:  That is correct.

1   your Honor for giving us this time.  We have taken up so much

2   time addressing these.  It would be productive to go forward

3   at this point because I would be inclined to recommend to my

4   client that we proceed.

00:44:55 5          Is there anything the parties can do to supplement

6   the presentation of today to be helpful to your Honor, in

7   which case it would make sense to come back next Tuesday?

8   Otherwise, my recommendation would be that we go forward

9   today.

00:45:11 10          THE COURT:  No.  I think probably we ought to wait

11   until next week.  Let me think about this.

12          MS. AXEL:  And does the Court wish to hear from the

13   complaining witness?

14          THE COURT:  No, I don't think so.

00:45:41 15          MR. NICOLAYSEN:  Your Honor, can the parties submit

16   anything in particular that would be of help to your Honor,

17   such as English translations of the witness statements,

18   anything that might elaborate further on the matters

19   addressed on the record today?

00:46:02 20          THE COURT:  You have statements from his wife and

21   children?

22          MS. AXEL:  Yes, your Honor.

23          MR. NICOLAYSEN:  Well, those might be the initial

24   statements.

00:46:12 25          THE COURT:  Well, do you have something beyond the

```
 1    initial statements?

 2               MS. AXEL:  Yes, your Honor.

 3               THE COURT:  Okay.  Has the defense seen those?

 4               MR. NICOLAYSEN:  May I confer with Government

00:46:31 5    counsel, your Honor?

 6               THE COURT:  Just a minute.

 7               MR. NICOLAYSEN:  Is that acceptable?

 8               THE COURT:  Excuse me, ladies.

 9               MS. AXEL:  Sorry, your Honor.  I thought you said

00:46:3? 10   yes.

11               THE COURT:  That's all right.

12               Has he seen those --

13               MS. HSU:  I don't believe so, your Honor.  We

14    requested --

00:46:4? 15               MR. NICOLAYSEN:  That's fine.  I believe part of

16    that is Grand Jury, your Honor.  We never got to the point

17    where a 6(e) motion to the Court was filed.

18               THE COURT:  Okay.  I think I'd like to see those,

19    and I think I have a summary of what the initial statements

00:47:02 20   were.  So, yes, I'd like to see those.

21               MR. NICOLAYSEN:  Would your Honor orally --

22               THE COURT:  And I --

23               MR. NICOLAYSEN:  I'm sorry.  I apologize.

24               THE COURT:  And please submit an order so that

00:47:12 25   I can -- if they're Grand Jury material so that I can sign it
```

UNITED STATES DISTRICT COURT

1           UNITED STATES DISTRICT COURT

2           CENTRAL DISTRICT OF CALIFORNIA

3       HONORABLE PERCY ANDERSON, JUDGE PRESIDING

4   UNITED STATES OF AMERICA,        )
                                     )
5                                    )
                                     )
6                    Plaintiff,      )
                                     )
7                                    )
                                     )
8           Vs.                      )   No. CR 09-00698 (A) PA
                                     )
9                                    )
                                     )
10  JOSE LUIS MARTINEZ-OCAMPO,       )
                                     )
11                                   )
                                     )
12                   Defendant.      )
                                     )
13  _____)

14

15

16           REPORTER'S TRANSCRIPT OF SENTENCING

17              LOS ANGELES, CALIFORNIA

18      TUESDAY, JANUARY 19, 2010; 8:35 A.M.

19

20

21           LEANDRA AMBER, CSR 12070, RPR
         OFFICIAL U.S. DISTRICT COURT REPORTER
22           312 NORTH SPRING STREET, # 408
             LOS ANGELES, CALIFORNIA 90012
23              www.leandraamber.com
                   (213) 894-6603

24

25

10

|   |   |
|---|---|
| 1 | THE COURT:  What I would suggest that we do is why |
| 2 | don't you -- maybe the Government can provide you with any |
| 3 | documentation that the counsellor has for that amount.  We'll |
| 4 | defer the issue of restitution for 30 days. |
| 00:14:18  5 | If you're not -- if you've got -- if you still have |
| 6 | an objection to the amount, I'll have -- we can come back in |
| 7 | and sort -- sort that out. |
| 8 | MR. NICOLAYSEN:  Is the -- that's fine, your Honor, |
| 9 | and I thank the Court. |
| 00:14:3  10 | Is the January 25th date then off calendar?  We |
| 11 | don't need the hearing per se. |
| 12 | THE COURT:  No.  That will come off, and we'll put |
| 13 | it over.  I'll defer the issue of restitution for a month, |
| 14 | let's say until February 15th. |
| 00:14:5  15 | I'll ask the Government to -- I'll ask counsel to |
| 16 | meet and confer about this amount, see if you can agree on |
| 17 | the amount.  And if not, you can file your respective |
| 18 | positions on February the 8th, and then I'll decide the issue |
| 19 | of restitution on the 15th.  And if the parties wish to have |
| 00:15:1  20 | a hearing, we'll have it. |
| 21 | MS. HSU:  Your Honor, my impression from the case |
| 22 | agent is that -- if I may be heard.  I'm sorry -- that the |
| 23 | counselling organization will not release any receipts or any |
| 24 | of those clinical reports without a court order. |
| 00:15:3  25 | So to go around the issue, I'm proposing that I |

UNITED STATES DISTRICT COURT

11

1    submit a prosed order regarding the receipts.

2          THE COURT:  That's fine.  I'll sign it.

3          MS. HSU:  Thank you.

4          MR. NICOLAYSEN:  And we will seek to have a

00:15:47 5    stipulation before the Court, which we would agree would

6    be -- it would be incorporated into the judgment and

7    commitment order.

8          THE COURT:  All right.  Was the Presentence Report

9    timely disclosed to both parties?

00:16:01 10          MR. NICOLAYSEN:  It was, your Honor.

11          MS. HSU:  Yes.

12          THE COURT:  The Court has received, read, and

13    considered the Presentence Report, an addendum to the

14    Presentence Report, and the parties' sentencing memoranda.

00:16:21 15          Apart from any issues raised in your sentencing

16    memoranda, which we'll address shortly, is the Presentence

17    Report factually accurate?  Do you have any objections,

18    corrections, or additions?

19          MR. NICOLAYSEN:  None, other than what has already

00:16:32 20    been briefed, your Honor.

21          THE COURT:  All right.  Well, let me make sure that

22    we've covered all those.

23          As I understand it, you had objections to

24    references in the Presentence Report to defendant's date of

00:16:42 25    birth, his Social Security number, his number of children,

UNITED STATES DISTRICT COURT

1    his use of an alias; and none of those issues will have any

2    effect on sentencing.

3            And as I understand it, there was some disagreement

4    among the parties as to what the offense level is.  And as I

00:17:11 5   understand it, that issue has been resolved.

6            MR. NICOLAYSEN:  Yes.

7            THE COURT:  Okay.  Is there anything else?

8            MR. NICOLAYSEN:  I would respectfully ask the Court

9    to strike Paragraphs 9 through 14 and Paragraph 16 of the

00:17:21 10  Presentence Report, which falls within the offense conduct

11   section due to the disputed nature of the factual assertions

12   contained in those paragraphs, which have now been resolved.

13           I would argue in favor of the defense by the

14   stipulation that was filed prior to the January 11th hearing.

00:17:41 15          THE COURT:  What's the Government's position?

16           MS. HSU:  Your Honor, if I may have a moment.

17           (An off-the-record discussion was held.)

18           MS. HSU:  Your Honor, the Government opposes only

19   because Miss Sotello's version is different from defendant's.

00:18:12 20  It doesn't mean whichever side is correct.

21           MR. NICOLAYSEN:  The concern that I have is that

22   the Presentence Report in Paragraphs 9 through 14 and 16

23   adopts as true the contentions made by the complaining

24   witness, Sotello, who is the child's mother.

00:18:32 25          The report is written as if those assertions are,

1    in fact, what happened.  And I -- I, once again, as I did

2    last week, thank the Government for revisiting this case

3    very thoroughly, and we have now come to a very different

4    understanding of events.

5    00:18:48         To the degree the PSR is premised on accepting

6    Sotello's assertions, it is, in my view, prejudicial to my

7    client, particularly if a third party at some future point

8    such as a treatment provider or the Bureau of Prisons in

9    making any decision on designation -- we don't know what the

10   00:19:01 sentence today is going to be -- is going to rely on any of

11   those assertions on Paragraphs 9 through 14 and/or 16.

12          So I do respectfully ask that they be stricken.

13          THE COURT:  Just one second.

14          All right.  So it's paragraphs which?

15   00:20:01    MR. NICOLAYSEN:  Nine through fourteen, inclusive,

16   and sixteen.

17          THE COURT:  Okay.  I'm going to deny the motion

18   with respect to Paragraphs 9, 10.  I'll strike the second --

19   or ask the probation department to strike the second and

20   00:21:42 third sentence of Paragraph 11, strike Paragraph 12.

21   Paragraph 14 will be -- the motion is denied, and I'll strike

22   paragraph -- I'll strike the second sentence in Paragraph 16.

23          MR. NICOLAYSEN:  The second sentence, your Honor?

24          THE COURT:  Yes.

25   00:23:12    MR. NICOLAYSEN:  Would your Honor strike the word

14

1        "Captive" in the first sentence of Paragraph 16?

2                    THE COURT:  No.

3                    Anything else on that issue?

4                    MR. NICOLAYSEN:  Only to respectfully ask the Court

00:23:37 5    to direct the Probation Office to issue a corrected PSR and

6    to give that corrected version to the marshals.

7                    THE COURT:  You mean the BOP?

8                    MR. NICOLAYSEN:  Yes.  The Marshals receive it and

9    then send it together with other materials to the Bureau of

00:23:51 10   Prisons.

11                   THE COURT:  I'll order that a corrected or revised

12   PSR be prepared.

13                   Has the defendant and both counsel read the

14   Presentence Report and the addendum?

00:24:11 15                  MR. NICOLAYSEN:  We have, your Honor.

16                   THE COURT:  Do you wish to be heard?

17                   MR. NICOLAYSEN:  I do, your Honor.  And I will be

18   brief because I know we've covered many of these points last

19   week.

00:24:23 20                  I speak to your Honor with great respect for the

21   Court's concerns about the four-year-old child.  I'm very

22   mindful that the Court was very concerned as to the

23   offense -- events that occurred in June of 2009 and then

24   carrying over into the first week of July of 2009.

00:24:42 25                  In mitigation, I would like to emphasize the

UNITED STATES DISTRICT COURT

1    following:  We now know through agreement with Government

2    counsel that this was not an extortion case.  There were no

3    threats made.  What we have is a situation where the child

4    was separated from her parents for an extended period of

00:25:04  5    time.

6         We stipulate that the child did ask for her

7    parents, and my client was forthcoming with the Government at

8    the meeting in December of the U.S. Attorney's Office that

9    the child had even cried for her mother.  It was not a

00:25:1 10    situation that my client had anticipated would last anywhere

11    nearly as long as it did.

12         What should be emphasized is that this is not a

13    situation among strangers.  There is a family relationship

14    although distant cousins between my client and Sotello's

00:25:3 15    family.

16         The child --

17         THE COURT:  So they were related?

18         MR. NICOLAYSEN:  In a distant way.  That is

19    correct.

00:25:4 20         It is important to point out that the child knew --

21         THE COURT:  Excuse me.

22         MR. NICOLAYSEN:  Certainly.

23         THE COURT:  Did they ever have any contact prior to

24    this incident?

00:25:5 25         MR. NICOLAYSEN:  Yes.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA )
                        )
        vs.        )    PRESENTENCE INVESTIGATION REPORT
                        )
Jose Luis Martinez-Ocampo  )    Docket No. CR09-00698(A)-PA

---

**Prepared For:**

## THE HONORABLE PERCY ANDERSON
## UNITED STATES DISTRICT JUDGE

**Assistant United States Attorney**

Lily Chiao-I Hsu
1200 United States Courthouse
312 North Spring Street
Los Angeles, CA 90012
213-894-7419

**Defense Counsel**

Gregory Nicolaysen (Appointed)
16000 Ventura Boulevard- Suite 500
Encino, CA 91436
818-998-2706

**Prepared by:**

Brandi Foy   @cacp.uscourts.gov
United States Probation Officer
600 U.S. Courthouse
312 North Spring Street
Los Angeles, CA 90012-4708
213-894-8863

**Sentence Date:**           12/07/2009

**Offense:**     *Count 1:*     Harboring and Concealing an Illegal Alien (8 U.S.C. §1324(a)(1)(A)(iii)) 5 years and/or $250,000 (Class D Felony)

**Release Status:**     Arrest date: 07/13/2009; Detained without bail since arrest.

**Detainers:**     Pending Sentence & Outstanding Bench Warrant: Los Angeles County Superior Court Case#: 7DY05142

**Co-Defendants:**     None

**Related Cases:**     None

**Date Report Disclosed: NOV 9 2009**       **Date Parties Notified: NOV 9 2009**

Agreement, and discovery. Such information was taken into consideration during the preparation of this Report.

9.  On July 3, 2009, E. Sotelo (Sotelo), a native and citizen of Mexico, informed the Los Angeles Police Department (LAPD), that her four-year-old daughter, B. Martinez, a native and citizen of Mexico, was being held captive by Martinez-Ocampo, a smuggler who had transported B. Martinez from Mexico to the United States on or about June 1, 2009. According to Sotelo, on May 30, 2009, in Mexico, she made arrangements with Martinez-Ocampo and two other individuals to smuggle her self and her two children, B. Martinez and her 11-year-old son, into the United States for a total smuggling fee of $4,500, to be paid in full in a three-month period.

10. Sotelo was subsequently approached by another smuggler who informed her that the fee Martinez-Ocampo was charging her was too much. Upon learning that another smuggler had approached Sotelo, Martinez-Ocampo became upset and crossed the border into the United States with B. Martinez, leaving behind Sotelo and her son.

11. On June 25, 2009, Sotelo contacted Martinez-Ocampo on the cellular telephone number he had provided to her. Martinez-Ocampo threatened that if Sotelo did not pay him the agreed smuggling fee of $4,500, he would kill her and her family. He also informed Sotelo that even if she did pay, he would still return B. Martinez to Mexico.



12. Officers from the LAPD also spoke with F. Guadarama (Guadarama), B. Martinez's father, who informed them that Martinez-Ocampo was holding onto B. Martinez until her smuggling fee had been fully paid. Guadarama stated that the total smuggling fee for Sotelo, B. Martinez, and the 11-year-old son was $9,000. Guadarama had already paid Martinez-Ocampo $6,000 through a wire transfer for the smuggling of his wife and son and that Martinez-Ocampo had become irritated when he was unable to pay the remaining $3,000 for the smuggling of B. Martinez. In response, Martinez-Ocampo increased the smuggling fee to $11,000.

13. On July 2, 2009, when Sotelo arrived in Los Angeles, California, she unsuccessfully attempted to contact Martinez-Ocampo on the two cellular telephone numbers he had provided to her.

14. B. Martinez provided ICE agents with the following information: While at Martinez-Ocampo's house, she was crying, did not want to eat, and was constantly asking for her mother. She was physically abused while she was held captive, specifically, Martinez-Ocampo's daughter hit and screamed at her, Martinez-Ocampo's sons hit her and drag her by her feet which resulted in a scar on her back, and she had a scar above her left eye when she was hit by Martinez-Ocampo's sons on a separate occasion. B. Martinez also reported being sexually abused by Martinez-Ocampo's son who touched her front genital area while her pants were off. A forensic examination of B. Martinez was unable to confirm or refute whether B. Martinez had been sexually abused.

5

## FINES

94.   Guideline Provisions:      Application of U.S.S.G. §5E1.2 results in a fine range of $4,000 to $40,000.

95.   United States Sentencing Guideline Section 5E1.2(a) and (e) advise that the Court impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay, or that a fine would unduly burden his dependents.

96.   Statutory Provisions:      $250,000 maximum per count; 18 U.S.C. §3571(b)(3); Count 1.

$100 mandatory special assessment.  18 U.S.C. §3013.

97.   Pursuant to 18 U.S.C. §3572(d), the order for a fine must establish the manner in which and the schedule according to which the fine is to be paid. The interest due on fines is addressed at 18 U.S.C. § 3612(f).

98.   Pursuant to 18 U.S.C. §3572(a)(6) and U.S.S.G. § 5E1.2(d)(7) among the factors the court shall consider in determining the amount of a fine are the expected costs to the government of any term of imprisonment, supervised release, or probation. During fiscal year 2008 the monthly per capita costs were $2,157.88 for prison facilities, $1990.13 for community corrections confinement, and $311.94 for supervision.

## RESTITUTION

99.   Restitution is not an issue in this case.

## PART E. FACTORS THAT MAY WARRANT DEPARTURE

100.  The Probation Officer has not identified any factors that would warrant a recommendation for a departure from the advisory guideline range.

15

## PART F. FACTORS THAT MAY WARRANT A SENTENCE OUTSIDE THE ADVISORY GUIDELINES SYSTEM

101.   The Probation Officer has not identified any factors that would warrant a recommendation for a variance outside the advisory guideline range.

Respectfully submitted,

MICHELLE A. CAREY
Chief U. S. Probation Officer

BRANDI FOY
U. S. Probation Officer
213-894-8863

Reviewed and Approved:

TERESA M. BRANTLEY
Supervisor
213-894-6023

BF:bf
11/4/2009

G:\COMMON\DOCS\T45\MARTINEZ-OCAMPO_JOSE_118607_PA_PSR.WPD

16